UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CHARLES THOMAS YOUNG,

                            Plaintiff,                Case # 18-CV-114-FPG

v.                                                        DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.

**INTRODUCTION**

*Pro se* Plaintiff Charles Thomas Young brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied his applications for Child's Insurance Benefits ("CIB")[1] and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 1, 7.[2] For the reasons that follow, the Commissioner's motion is GRANTED, Young's motion is DENIED, and the complaint is DISMISSED.

---

[1] Child's Insurance Benefits is a program wherein the child of a fully insured person may receive benefits if certain requirements are met. *See* 42 U.S.C. § 402(d). The requirement in dispute here is that the child—if over eighteen years old—must be disabled. *Id.* § 402(d)(1)(B).

[2] There is some confusion that the Court would like to clear up. Young did not timely file a motion for judgment on the pleadings. As a result, this Court issued an Order to Show Cause. ECF No. 10. Young responded to the Order, and this Court then determined that it would construe the complaint as Young's dispositive motion. ECF No. 14. But Young appears to have interpreted the Court's text order (ECF No. 14) to mean that he prevailed and is entitled to benefits. *See* ECF Nos. 15, 17. This was not the intended meaning of the Court's order—its only purpose was to inform Young that he did not need to submit any further briefing for the Court's consideration.

## BACKGROUND

Young protectively filed for CIB and SSI in February 2013. Tr.[3] 11. He alleged disability since January 2003 due to a head injury, dyslexia, migraines, asthma, rhinitis, and colon polyps. Tr. 248. Administrative Law Judge William M. Weir (the "ALJ") held two hearings in March 2016. Tr. 44-45, 84. On September 16, 2016, the ALJ issued a decision finding that Young was not disabled. Tr. 11-27. On November 20, 2017, the Appeals Council denied Young's request for review. Tr. 1-3. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

---

[3] "Tr." refers to the administrative record in this matter. ECF No. 6.

## II.     Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether an adult claimant is disabled within the meaning of the Act.  *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id.* § 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id.* § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work.  20 C.F.R. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  *Id.*  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id.* § 404.1520(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual

functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

A different, three-step process applies to child disability claims. At step one, the ALJ determines whether the child is engaged in substantial gainful work activity. 20 C.F.R. § 416.924(b). If so, the child is not disabled. If not, the ALJ proceeds to step two and determines whether the child has an impairment or combination of impairments that is "severe," meaning that it causes "more than minimal functional limitations." *Id*. § 416.924(c). If the child does not have a severe impairment or combination of impairments, he or she is not disabled. If the child does, the ALJ continues to step three.

At step three, the ALJ examines whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the criteria of a listed impairment in the Listings. *Id.* § 416.924(d). If so, the child is disabled.

To determine whether an impairment or combination of impairments functionally equals the Listings, the ALJ must assess the child's functioning in six domains: (1) Acquiring and Using Information; (2) Attending and Completing Tasks; (3) Interacting and Relating with Others; (4) Moving About and Manipulating Objects; (5) Caring for Yourself; and (6) Health and Physical Well-Being. *Id.* § 416.926a(b)(1)(i)-(vi).

To functionally equal the Listings, the child's impairments must cause "marked" limitations in two domains or an "extreme" limitation in one domain. *Id.* § 416.926a(a). A child has a marked limitation when his or her impairment(s) "interferes seriously" with the ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(2). A child has an extreme

4

limitation when his or her impairment(s) "interferes very seriously" with the ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(3).

## DISCUSSION

### I. The ALJ's Decision

The ALJ applied both the adult and child evaluation processes to analyze Young's claim for benefits. At step one, the ALJ found that Young had not engaged in substantial gainful activity since the alleged onset date. Tr. 16. At step two, the ALJ found that Young had severe impairments of obesity, migraine headaches, and status post closed traumatic brain injury. *Id.*

At step three, the ALJ found that "[n]either before nor after [Young's] eighteenth birthday" did these impairments, alone or in combination, meet or medically equal any Listings impairment. Tr. 17. Regarding the six domains for childhood disability, the ALJ found that Young had no marked or extreme limitations in any domain. Tr. 18-23.

The ALJ determined that Young retains the RFC to perform unskilled sedentary work.[4] Tr. 18. At step four, the ALJ indicated that Young has no past relevant work. Tr. 26. At step five, the ALJ found that Young can adjust to other work that exists in significant numbers in the national economy given his RFC, age, education, and work experience. Tr. 26-27. Accordingly, the ALJ concluded that Young was not disabled. Tr. 27.

### II. Analysis

Young raises a number of arguments challenging the ALJ's decision. *See generally* ECF No. 1 at 5-12. The Court examines each argument below, keeping in mind that *pro se* pleadings

---

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

5

are to be read liberally and interpreted to "raise the strongest arguments that they suggest." *Ortiz-Diaz v. Soc. Sec.*, No. 17-CV-7532, 2018 WL 791256, at *2 (E.D.N.Y. Feb. 7, 2018).

### a. Dyslexia

Young first challenges the ALJ's conclusion that his alleged dyslexia was not a medically determinable impairment.

"The ALJ must determine at step two whether or not the claimant has a severe impairment. Before an impairment can be found severe, it must be 'medically determinable.'" *Crosby v. Comm'r of Soc. Sec.*, No. 18-CV-391, 2019 WL 3050493, at *3 (W.D.N.Y. July 12, 2019). "A medically determinable impairment is one that results from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* (internal quotation marks and brackets omitted). A claimant's statement of symptoms, standing alone, cannot establish a medically determinable impairment. *See Diaz v. Comm'r of Soc. Sec.*, No. 18-CV-6224P, 2019 WL 2401593, at *2 (W.D.N.Y. June 7, 2019).

The record is unclear with respect to Young's alleged dyslexia. Treatment notes over the years indicate that Young has dyslexia. *See, e.g.*, Tr. 321, 330, 337, 352, 484, 510, 515, 556. But from what the Court can gather, these notes merely recite Young's subjective complaints of dyslexia and do not identify a formally diagnosed condition. For example, one set of records from Amherst University Health Center lists dyslexia in Young's "Problem List" with an onset date of 11/13/2014. *See* Tr. 484. This refers to a routine medical examination where dyslexia was discussed but no diagnostic evaluation occurred. *See* Tr. 509-14. Rather, the doctor referred Young to a neurologist. Tr. 509.

At most, a few evaluations indicate that Young might have a reading or learning disorder. At a consultative intelligence evaluation, Gregory Fabiano, Ph.D., opined that Young's reading score "suggests the presence of a reading disorder," but he did not diagnose Young with a reading disorder or dyslexia. Tr. 405. At a psychiatric examination, Janine Ippolito, Psy.D., similarly noted that Young had a history of learning problems and the results of tests suggested that he might have a cognitive or learning disorder. Tr. 363-64. Nevertheless, Dr. Ippolito only identified "rule out cognitive disorder" and "rule out learning disorder" as possible diagnoses. Tr. 364; *see also Timmons v. Berryhill*, No. 16-CV-6314, 2017 WL 2821558, at *3 (W.D.N.Y. June 30, 2017) (noting that the phrase "rule out" means that "such a diagnosis was possible" but is not an "affirmative diagnosis" of a disorder).

On this record, the ALJ did not err when he concluded that Young's alleged dyslexia was not a medically determinable impairment. No acceptable medical source formally diagnosed Young with dyslexia,[5] and there is no objective medical evidence or diagnostic finding establishing the existence of that condition.

In addition, the Court cannot conclude that the ALJ should have further developed the record with respect to Young's alleged dyslexia. *See Timmons*, 2017 WL 2821558, at *3. Not only was there an absence of medical evidence regarding the condition, but there was affirmative

---

[5] Attached to the complaint are several exhibits, one of which is a "Medical Examination for Employability Assessment" form. *See* ECF No. 1 at 66-67. This form lists "severe dyslexia" as one of Young's conditions and is signed by Hassan Fares, who is apparently one of Young's treating physicians. *See id.* This document was not created until at least December 2017—more than one year after the ALJ issued his decision. The Court may not review it because it cannot "consider evidence outside of the administrative record in reviewing a claim for benefits." *Stone v. Comm'r of Soc. Sec.*, No. 17-CV-569, 2018 WL 1581993, at *5 (S.D.N.Y. May 27, 2018). Furthermore, absent good cause, the Court declines to remand the case so that this evidence may be considered. *See* 42 U.S.C. § 405(g); *see also Lisa v. Sec'y of Dep't of Health & Hum. Servs.*, 940 F.2d 40, 46 (2d Cir. 1991) ("[A claimant] must go beyond showing that the proffered evidence did not exist during the pendency of the administrative proceeding. Rather, [he] must establish good cause for failing to produce and present the evidence at that time.").

evidence that Young did not have significant reading-related difficulties. The ALJ noted that Young received high grades—including a B+ in English—and performed well on a standardized examination—including "Well Above Average" in Vocabulary and "Average" in Reading.[6] Tr. 19, 20, 396, 397. In addition, neither Dr. Fabiano nor Dr. Ippolito identified any reading-related limitations in their medical source statements. *See* Tr. 364, 405. While there was conflicting evidence in the record, including Young's testimony on his inability to read and write, Tr. 61-62, the ALJ reasonably resolved the conflict in light of the above evidence. *See McGill v. Berryhill*, No. 16-CV-4970, 2018 WL 1368047, at *10 (E.D.N.Y. Mar. 16, 2018) (stating that it is the "ALJ's task to resolve genuine conflicts in the medical evidence").

In short, given the absence of any formal diagnosis, the lack of objective medical evidence or diagnostic findings, and the affirmative evidence concerning Young's reading abilities, the ALJ did not err in his assessment of Young's alleged dyslexia.[7] *See Crosby*, 2019 WL 3050493, at *3.

   b. **Visual Disturbances**

Young next argues that the ALJ erroneously concluded that his "visual disturbances" constitute a non-severe impairment. ECF No. 1 at 6.

At step two of the disability analysis, the ALJ considers the medical severity of the claimant's impairments. "A 'severe impairment' is 'any impairment or combination of

---

[6] The Court recognizes that Young testified he was taught through audiovisual learning. *See* Tr. 62. Even so, his scores on his standardized examination show "Average" and "Slightly Below Average" scores in Reading and Language. Tr. 396. The ALJ therefore had a sound basis to conclude that Young's reading abilities were not as inadequate as he claimed.

[7] It is worth noting that even if Young were illiterate, the Grid Rules would nonetheless direct a finding of "not disabled." *See Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003) (discussing relevant rules); 20 C.F.R. Pt. 404, Subpt. P, App'x 2 ("[T]he functional capability for a full range of sedentary work represents sufficient numbers of jobs to indicate substantial vocational scope for those individuals age 18-44 even if they are illiterate or unable to communicate in English.").

8

impairments which significantly limits the claimant's physical or mental ability to do basic work activities.'" *Zochios v. Berryhill*, No. 17-CV-6207, 2018 WL 1835451, at *3 (W.D.N.Y. Apr. 18, 2018) (internal brackets omitted). "A finding of 'not severe' should be made if the medical evidence establishes only a slight abnormality that would have no more than a minimal effect on an individual's ability to work." *Id.*

At the hearing, Young testified that he has vision problems that cause balance issues. He often trips and has difficulty going up and down stairs. Tr. 57-58. Nevertheless, the ALJ concluded that Young's impairment was not severe. He cited the treatment notes from Steven Awner, M.D., an ophthalmologist who treated Young's vision problems. At visits in October 2013, Dr. Awner recorded normal test results. *See* Tr. 16, 418-21. In 2015, Dr. Awner noted that the "only downside to not wearing glasses" would be "some blurring of his distance vision." Tr. 480. The ALJ concluded that Young's condition was non-severe because the "reported symptoms were subjective and highly variable, the objective findings were normal, and because Dr. Awner did not specify any limitations." Tr. 17.

The ALJ's conclusion is supported by substantial evidence. As with Young's dyslexia, there was conflicting evidence regarding the visual disturbances Young experienced. While Young testified that the disturbances had a significant effect on his daily life, the medical evidence and Dr. Awner's impression did not corroborate that claimed severity. Given that, it was within the ALJ's discretion to resolve the conflict against Young, *see McGill*, 2018 WL 1368047, at *10, and the "fact that other evidence could support a different conclusion is not enough" to upset the ALJ's determination.[8] *Piotrowski v. Comm'r of Soc. Sec.*, No. 18-CV-6075, 2019 WL 2266797, at *7 (W.D.N.Y. May 28, 2019).

---

[8] With his complaint, Young attached treatment notes from 2003 that relate to his visual disturbances and that were apparently not included in the administrative record. *See* ECF No. 1 at 72-73. As discussed, the

9

### c. Asthma

Young challenges the ALJ's evaluation of his asthma and rhinitis. ECF No. 1 at 8. He argues that these conditions affect his ability to perform work indoors (due to the "fumes, odors, dusts, [and] gases" therein) and outdoors (due to his asthma). *Id.*

The ALJ reasonably concluded otherwise, however, finding Young's asthma and rhinitis to be non-severe impairments. The ALJ noted that Young's "respiratory examinations were consistently within normal limits" and that "symptoms caused by these impairments were stable with medication." Tr. 16. The ALJ's reading of the record is supported by treatment notes spanning several years. *See, e.g.*, Tr. 350, 382, 385, 431. To be sure, Young's view is not without support in the record: a consultative examiner and state-agency review physician opined that he should avoid respiratory irritants. *See* Tr. 106, 369. Although the ALJ noted these contrary opinions, he did not rely on them. Under the circumstances, this was reasonable, as they were inconsistent with the record as a whole. *See* 20 C.F.R. § 404.1527(c)(4); *see also Piotrowski*, 2019 WL 2266797, at *6 (stating that an ALJ need not explain why he found particular evidence unpersuasive if the evidence of record permits the court to "glean the rationale of [the] ALJ's decision").

Because the ALJ's findings regarding Young's respiratory conditions are supported by substantial evidence, Young's argument fails.

### d. Traumatic Brain Injury

Young contends that his traumatic brain injury, and the cognitive deficits and migraines resulting therefrom, affect his ability to "perform basic forms of work." ECF No. 1 at 7.

---

Court cannot consider evidence outside of the administrative record. *Stone*, 2018 WL 1581993, at *5. Regardless, this evidence appears to be consistent with the ALJ's conclusion that Young's subjective complaints were not reflected in the objective medical evidence. *See* ECF No. 1 at 72-73.

10

The ALJ agreed that Young had a traumatic brain injury with attendant cognitive deficits and migraines. *See* Tr. 16, 24. But although he found Young's migraines to be a severe impairment, he concluded that they were not disabling. *See* Tr. 24. The ALJ noted that the headaches "improved and stabilized" during treatment, Tr. 24, 382, 435, 455, Young did not pursue "other treatment modalities to alleviate headache symptoms, despite the recommendation of treatment providers," Tr. 24, and he was able to perform well academically and engage in a variety of physical daily activities. Tr. 19, 20, 24. The ALJ also relied on the opinion of Donna Miller, D.O., who performed a consultative internal medicine examination. Tr. 366-69. She diagnosed Young with migraine headaches but did not prescribe any specific limitations related to them. *See* Tr. 369. As for cognitive deficits, both Dr. Ippolito and Dr. Fabiano diagnosed Young with migraines but concluded that he had no limitations in his ability to understand and complete simple tasks independently. Tr. 363-64, 405-06. The ALJ relied on this evidence to limit Young to unskilled work. *See* Tr. 19, 20, 24.

Young appears to assert that medication only moderately alleviates his migraines and that his headaches do, in fact, undermine his ability to perform basic forms of work. *See* ECF No. 1 at 7. However, the ALJ reasonably concluded that the migraines did not pose such a significant limitation on his ability to work. There is evidence that Young had one migraine per week, which was alleviated with prescription medication "with excellent results." Tr. 455. Given the limited frequency and severity of the migraines, the ALJ reasonably determined that they would not have a sustained effect on Young's ability to work. Dr. Miller's evaluation bolsters this conclusion.

Accordingly, the Court is not persuaded that the ALJ erred on this ground.[9] Furthermore, the ALJ's conclusion regarding the limitations posed by Young's cognitive deficits is supported by substantial evidence. *See* Tr. 363-64, 405-06.

### e. School Records Concerning Disability

Young was home-schooled and completed the requirements for a high-school education. Tr. 61-62, 395. In the record there is a document titled "Student's Statement Regarding School Attendance." Tr. 265. In this document, Young identifies his school and describes his attendance. *Id.* In addition, the form asks whether the student is disabled. *Id.* Young answers that question in the affirmative. *Id.* On the next page of the document is a certification section in which a school official can certify the accuracy of the student's statements regarding school attendance. *See* ECF No. 1 at 70. Young has provided the Court with a certification from Ronald Barstys, Director of Student Services at North Tonawanda City School District. *Id.* Young reads the director's certification to mean that he "certified" that Young was disabled, and he therefore questions why the ALJ found differently. *Id.* at 6.

As an initial matter, the mere fact that a person states that a claimant is disabled does not compel the SSA to so find. Rather, the SSA is "responsible for making the determination . . . about whether [a person] meet[s] the statutory definition of disability," and a "statement by a [] source

---

[9] Young also asserts that cysts in his brain support his disability claim. *See* ECF No. 1 at 7. But the record does not suggest that these cysts cause functional limitations, and the "mere presence" of a "medical condition is not enough" to establish disability. *Clark v. Berryhill*, No. 18-CV-325, 2019 WL 2052161, at *4 (D. Colo. May 7, 2019). Indeed, Young's providers did not find the cysts concerning. *See, e.g.*, Tr. 437 (stating that doctor would "keep an eye on [the cyst]"); Tr. 478 (stating that most recent MRI "showed some changes in his intracranial cysts but [the doctor] was not overly concerned"). Young has submitted a 2019 treatment note from Mikhail Strut, M.D., in which Dr. Strut opines that Young is "totally and permanently disabled" based on his traumatic brain injury. ECF No. 11 at 3. As discussed previously however, this Court may not consider new evidence in reviewing the ALJ's decision, and absent good cause it declines to remand the case so that the SSA may consider this evidence. *See Stone*, 2018 WL 1581993, at *5; *Lisa*, 940 F.2d at 46.

that you are 'disabled' . . . does not mean that [the administration] will determine that you are disabled." 20 C.F.R. § 404.1527(d)(1).

More importantly, the Court does not interpret the certification as Young does. The certification page requires a school official to certify only "items 1 and 2" of the student's form, which pertain to the student's attendance records. *See id.* at 69-70. The certification does not require the official to certify the student's claim of disability, which is labeled as item 3. *See id.* This reading is bolstered by the fact that Barstys included a letter with the certification in which he noted that the school district "does NOT keep track of Home Instructed students beyond compulsory age" and could only verify that Young's "individualized Home Instruction Plan (IHIP) has consistently met [the relevant regulations]." Tr. 262. In short, the certification cannot be read as an opinion that Young is disabled, and it does not undermine the ALJ's decision.

### f. Onset Date

Young argues that the ALJ incorrectly stated that his disability onset date was January 1, 2003, when it was January 17, 2003. *See* ECF No. 1 at 7; Tr. 16. However, Young does not explain, and the Court fails to discern, how this error was prejudicial. This discrete misstatement appears harmless and therefore is not a ground for remand. *See Morales v. Comm'r of Soc. Sec.*, No. 17-CV-341, 2019 WL 1109572, at *3 (W.D.N.Y. Mar. 11, 2019) (collecting cases and stating that where "the correction of a factual error . . . would not change the outcome, that error is deemed harmless").

### g. Summary

Young has not convinced the Court that the ALJ committed any error justifying remand. Although the record shows—and the ALJ found—that Young has several serious medical conditions that affect his ability to perform many tasks, there was substantial evidence to support

13

the ALJ's conclusion that Young's conditions do not wholly impair his ability to work. Young's mere disagreement with how the ALJ resolved the evidentiary conflicts and weighed the evidence does not give the Court a basis to remand this case. *See Piotrowski*, 2019 WL 2266797, at *6.

## CONCLUSION

Accordingly, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 7) is GRANTED and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 1) is DENIED. The complaint is DISMISSED WITH PREJUDICE, and the Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: July 30, 2019
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court